UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MIGUEL PIZARRO**,  Case No. 1:11 CV 594

    Petitioner,  Judge Jack Zouhary

v.  REPORT AND RECOMMENDATION

**RICH GANSHEIMER**,

    Respondent.  Magistrate Judge James R. Knepp, II

### INTRODUCTION

Petitioner Miguel Pizarro, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent Rich Gansheimer, Warden of the Lake Erie Correctional Institution, filed a Motion to Dismiss (Doc. 8) to which Petitioner filed an Opposition (Doc. 15). Petitioner also filed a Motion for Evidentiary Hearing (Doc. 13) and a Motion for Appointment of Counsel (Doc. 14). Respondent filed an Opposition to Petitioner's Motion for Evidentiary Hearing (Doc. 15), to which Petitioner filed a Reply (Doc. 19). Respondent has requested the opportunity to brief the merits of the Petition more fully in the event the Court denies his Motion to Dismiss.

The district court has jurisdiction over the Petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated May 26, 2011). For the reasons discussed below, the undersigned denies Petitioner's Motion for Evidentiary Hearing, denies Petitioner's Motion for Appointment of Counsel, and recommends Respondent's Motion to Dismiss be granted.

**BACKGROUND**

*Factual Background and State Court Proceedings*

For purposes of habeas corpus review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record. *Id.* In this case, however, no trial occurred, and no state court made factual findings. *See generally State v. Pizarro*, 2010 Ohio 4007 (Ohio Ct. App. 2010). Thus, no state court has recited on the record the factual events giving rise to the charges brought against Petitioner.

In any event, various police and eye witness reports are included in the record before the Court because they were attached to Petitioner's motion to withdraw his guilty plea. (Doc. 8-1, at 30–64). These reports indicate that the victim, Phillip Parish, was playing basketball at a public park one evening in April 2007. (Doc. 8-2, at 30). He and some friends engaged in a five-on-five game with a group of Puerto Rican males, which included Petitioner. (Doc. 8-2, at 30). Before the end of the game, Petitioner allegedly quit playing because of the fouls being called against him. (Doc. 8-2, at 30). While Parish and others were playing a second game, witnesses reported Petitioner returned to the basketball court with a gun in his hand and proceeded to shoot Parish multiple times in the chest. (Doc. 8-2, at 30, 38, 40–41). A melee ensued which resulted in Parish being shot at least twice more by a second assailant. (Doc. 8-2, at 31, 38, 40–41).

Petitioner was indicted on one count of aggravated murder with a firearm specification and three counts of obstructing justice. (Doc. 8-2, at 1–5). As part of a plea bargain, Petitioner agreed

to plead guilty to one count of involuntary manslaughter with a firearm specification and proceed by information on an unindicted charge of kidnaping. (Doc. 8-2, at 6–7). Petitioner executed a written waiver of indictment on the charge of kidnaping. (Doc. 8-1, at 6).

On September 5, 2007, the trial court conducted a change of plea colloquy to ensure Petitioner's guilty plea was knowingly and voluntarily made, then accepted Petitioner's guilty plea to the charges of kidnaping and involuntary manslaughter. (Doc. 8-1, at 13–20; Doc. 8-2, at 10). The court sentenced Petitioner to ten years imprisonment on the charge of kidnaping and ten years imprisonment on the charge of involuntary manslaughter, plus three years for the firearm specification, all to run consecutively for a total term of imprisonment of 23 years. (Doc. 8-1, at 23–24; Doc. 8-2, at 9).

On June 3, 2009, Petitioner moved the trial court to withdraw his guilty plea to the kidnaping charge, arguing that he was "intimidated and pressured" by his attorneys and the prosecutor to plead guilty to kidnaping when "no complaint, allegation[,] or insinuated criteria elements existed to qualify a crime of kidna[p]ing was committed." (Doc. 8-1, at 11–12). Petitioner also argued his trial counsel was ineffective. (Doc. 8-1, at 13–14). Twelve days later, the trial court denied Petitioner's motion in a very brief entry, noting only that Petitioner's plea was knowing, well-informed, intentional, and voluntary. (Doc. 8-1, at 75). Petitioner timely appealed this denial. (Doc. 8-1, at 76). He asserted two assignments of error:

> Assignment of Error I: The trial court erred in denying [Petitioner] an evidentiary hearing on his post-sentence motion to withdraw his plea of guilty to kidnaping.
>
> Assignment of Error II: The trial court erred in denying [Petitioner's] motion to withdraw his plea of guilty as [Petitioner] was provided ineffective assistance of counsel at the time of his plea.

(Doc. 8-1, at 87).

3

On August 26, 2010, the Court of Appeals affirmed the denial of Petitioner's motion to withdraw his guilty plea. (Doc. 8-1, at 112). Petitioner subsequently filed a notice of appeal to the Ohio Supreme Court. (Doc. 8-1, at 118). In his memorandum in support of jurisdiction, Petitioner argued two propositions of law:

> The Eighth District Court of Appeals erred in affirming the trial court's decision denying [Petitioner] an evidentiary hearing on his post-sentence motion to withdraw his plea of guilty to kidnaping.
>
> The Eighth District Court of Appeals erred in affirming the trial court's decision denying [Petitioner's] motion to withdraw his plea of guilty as [Petitioner] was provided ineffective assistance of counsel at the time of his plea.

(Doc. 8-1, at 121). On December 15, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 8-1, at 142).

*Federal Habeas Corpus*

Petitioner filed a Petition for a writ of habeas corpus on March 23, 2011. (Doc. 1). He raises two grounds for relief:

> Ground for Relief No. I: The trial court erred in denying Petitioner an evidentiary hearing on his post-sentence motion to withdraw his plea of guilty to kidna[p]ing where there was insufficient evidence to support such charge[,] violating Petitioner's constitutional right to due process under the Fourteenth Amendment.
>
> Ground for Relief No. II: The trial court erred in denying Petitioner's motion to withdraw his plea of guilty as Petitioner was provided ineffective assistance of counsel at the time of his plea[,] violating Petitioner's constitutional rights to effective assistance of counsel under the Sixth Amendment and due process under the Fourteenth Amendment.

(Doc. 1-1, at 12, 17).

## MOTION TO DISMISS

Respondent moves to dismiss the Petition on the basis of the statute of limitations. Under the

4

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), there is generally a one-year period in which a prisoner in state custody may file a petition for habeas relief in federal court:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA statute of limitations is not absolute; it can be statutorily or equitably tolled. The statute provides that the time during which post-conviction or other collateral review proceedings are pending in state court "shall not be counted toward any period of limitation". 28 U.S.C. § 2244(d)(2). In addition, courts have allowed equitable tolling of the statute, which generally involves considering five factors: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim. *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). When the petitioner does not claim ignorance of the filing requirement, the court's inquiry is focused on examining "his diligence in pursuing his rights and

the reasonableness of his ignorance of the effect of his delay." *Id.* Also, the fourth factor – the absence of prejudice to the respondent – may only be considered if the other factors of the test are met. *Brown v. U.S.*, 20 F. App'x 373, 375 (6th Cir., 2001). Such equitable tolling "is permissible under [AEDPA], although rare", and is a question to be decided on a case-by-case basis. *King*, 378 F.3d at 553.

When correcting a manifest miscarriage of justice, the five factors discussed in *King* are not necessarily determinative. The AEDPA time limitation is tolled "if the petitioner presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Turner v. Romanowski*, 409 F. App'x 922, 926 (6th Cir. 2011). "[T]he Supreme Court has never required reasonable diligence to be shown when seeking equitable tolling due to actual innocence." *Perkins v. McQuiggin*, 670 F.3d 665, 674 (6th Cir. 2012). Nevertheless, "[a]ll credible claims of actual innocence . . . must be based on new reliable evidence", so as to implicate § 2244(d)(1)(D). *Id.*

In this case, Petitioner acknowledges in the Petition that his conviction became final when the time period allowed for filing a direct appeal expired. (Doc. 1-1, at 8). This is a correct application of § 2244(d)(1)(A). By rule, Petitioner had 30 days to file a notice of appeal from the trial court's entry of judgment. Ohio App. Rule 4(A). The trial court entered a final judgment on September 5, 2007 (Doc. 8-1, at 9), so the time period allowed for filing a direct appeal expired on October 5, 2007. Because Petitioner did not file a notice of appeal, this is the date the AEDPA statute of limitations began to run.

Under § 2244(d)(2), the one-year clock was tolled during the time in which Petitioner's post-conviction relief petition was pending, meaning the time from June 3, 2009 (the date of Petitioner's motion to withdraw his guilty plea) until December 15, 2010 (the date the Ohio Supreme Court

6

dismissed the appeal in Petitioner's collateral proceedings) did not count against his one year to file a habeas petition under AEDPA. However, because Petitioner's motion to withdraw his guilty plea was filed after October 6, 2008, this statutory tolling does not help him; Petitioner's time to file for federal habeas relief had already expired eight months before he initiated collateral review proceedings in state court. Collateral proceedings "can only serve to pause a clock that has not yet fully run"; they do not start it anew. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). "Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Id.* Accordingly, absent equitable tolling, the instant Petition is time-barred.

Though Petitioner argues actual innocence of the crime of kidnaping, he does not allege new evidence. Instead, he points to police reports and witness statements in existence before his plea to argue that his trial counsel was ineffective for convincing him to plead guilty when insufficient evidence existed to convict him of kidnaping had he gone to trial. Because this is not new evidence Petitioner could not have discovered through due diligence before pleading guilty, Petitioner's argument does not implicate § 2244(d)(1)(D), leaving only § 2244(d)(1)(A) applicable to his case. *See Perkins v. McQuiggin*, 670 F.3d 665, 674 (6th Cir. 2012). The Court will therefore consider the five factors recited in *King*, and focus on Petitioner's diligence, to determine whether equitable tolling applies.

In this case, Petitioner does not claim ignorance of the deadline to file a petition. Rather, his arguments focus on his diligence and his knowledge of his direct appeal rights. He argues equitable tolling should apply because the trial court failed to advise him of his right to appeal and be appointed counsel on appeal without cost to him. (Doc. 1-1, at 9). Petitioner argues that the trial court's failure to advise Petitioner of his direct appeal rights prevented Petitioner from filing a

7

timely appeal. (Doc. 15, at 17). The Sixth Circuit has encountered this argument before. In *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), the court – noting the statute requires only "due" diligence, not maximum feasible diligence, and that "the realities of the prison system" should be taken into account in determining due diligence – remanded a habeas petition for the district court to determine both (a) when the petitioner first learned of his right to appeal, and (b) when a reasonably diligent person in the petitioner's position could be reasonably expected to learn of his appeal rights. *Id.* at 471.

Here, Petitioner does not indicate when precisely he became aware of his appeal rights, but he does allege he contacted both the Public Defender and the Ohio Innocence Project in the first half of 2008. (Doc. 15, at 1). Included in the record is a letter to Petitioner from Public Defender John Fenlon dated February 29, 2008. (Doc. 16, at 3–4). This letter informed Petitioner in detail about the difference between post-conviction relief proceedings and a direct appeal, and that Petitioner had missed the deadline to file a direct appeal. (Doc. 16, at 3–4). It also made reference to a letter previously sent to Petitioner in January 2008 informing him the Public Defender would be unable to assist him, presumably with his direct appeal because he plead guilty.[1] (Doc. 16, at 3). Nonetheless, even if Petitioner was completely unaware of his right to a direct appeal, and deadline for filing it, until February 29, 2008 – about six months after the final judgment was entered – Petitioner still waited too long to file his Petition. That is, even subtracting these six months and starting the one-year clock on February 29, 2008, statutory tolling did not apply until June 3, 2009 – about three months more than one year after Petitioner undeniably became aware of his appeal and

---

1. As attorney Fenlon informed Petitioner, in cases where the defendant entered a guilty plea, the Public Defender "provides representation on appeal only when appointed by the court." (Doc. 16, at 4).

post-conviction relief rights. Not to mention, Petitioner waited another four months after any statutory tolling would have ended to file the Petition.

To account for this extra delay, Petitioner further argues his inability to speak English fluently contributed to his difficulty meeting filing deadlines. Petitioner also attributes the delayed filing to the fact he has not had the assistance of a lawyer or interpreter, and as a result has had to rely on "jailhouse lawyers". But the Sixth Circuit has held that neither a prisoner's difficulties with the English language nor the lack of counsel support equitable tolling. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("[w]here a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations."); *Inglesias v. Davis*, 2009 WL 87574, at *3 (6th Cir. 2009); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011) (noting the petitioner's pro se status and limited law library access do not affect the equitable tolling analysis); *Keeling v. Warden, Lebanon Corr. Inst.*, 2012 WL 447492, at *10 (6th Cir. 2012) (noting that a petitioner's pro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse a late filing). These arguments by Petitioner therefore fall short of justifying equitable tolling.

In sum, because Petitioner's actual innocence argument does not rely on new evidence and his arguments for lack of notice and constructive knowledge are undermined by his own diligent communication with lawyers, Petitioner's diligence is the focus of the Court's equitable tolling analysis under *King*. This analysis shows Petitioner can neither argue extraordinary circumstances out of his control prevented him from meeting the deadlines nor argue he was unaware of his appeal and post-conviction relief rights for less than a year before filing the Petition. Using the factors

enumerated in *King* and considering the record as a whole, the Court is persuaded equitable tolling is not appropriate in this case. Therefore, the undersigned recommends Respondent's Motion to Dismiss be granted, and the Petition dismissed. Because Respondent has requested the opportunity to brief the merits of the Petition in more detail should his Motion be denied, the Court will not address the merits of the Petition at this time.

## MOTION FOR EVIDENTIARY HEARING

Petitioner argues an evidentiary hearing is necessary to present evidence in favor of equitable tolling and to support his claim of ineffective assistance of counsel. (Doc. 13, at 2). Because these claims were not adjudicated on the merits in state court, however, § 2254(e)(2) limits the availability of an evidentiary hearing on them. *See Keeling*, 2012 WL 447492, at *10–11 (6th Cir. 2012). The Court cannot hold an evidentiary hearing on these issues unless Petitioner shows

> (A) the claim relies on –
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Here, the fact the Petition is time-barred moots the issue of whether a hearing is necessary. But even if that were not the case, Petitioner's claim of ineffective assistance relies on neither a new rule of constitutional law nor a factual predicate that could not have been previously discovered through the exercise of due diligence. Instead, it relies entirely on evidence in existence before his

10

plea. Thus, Petitioner cannot meet the (A) criteria for holding an evidentiary hearing on his ineffective assistance claim. Similarly, Petitioner is not entitled to an evidentiary hearing to develop a factual record necessary to support his equitable tolling argument because even if equitable tolling applied, it would not suffice to establish by clear and convincing evidence that no reasonable fact-finder would have found Petitioner guilty of kidnaping – precluding the (B) criteria from being met. Therefore, Petitioner's Motion for Evidentiary Hearing (Doc. 13) is denied, and would be denied even if his Petition were not barred by the AEDPA statute of limitations.

### MOTION FOR APPOINTMENT OF COUNSEL

Petitioner moves for counsel to be appointed, arguing counsel is necessary to assist him in addressing the complex issues necessary to correct a manifest injustice. The Habeas Rules provide situations when a federal habeas court must appoint counsel, but do not otherwise set a standard for when the court may appoint counsel. If counsel is necessary for effective discovery, after the court has authorized discovery on a showing of good cause, then counsel must be appointed. Habeas Rule 6(a). Similarly, if an evidentiary hearing is warranted, the court must appoint counsel. Habeas Rule 8(c). Neither of these situations are applicable to the instant case.

When not required by rule, whether to appoint counsel is within the sound discretion of the district court. *See Williams v. Dutton*, 844 F.2d 790 (Table), at *1 (6th Cir. 1988). And "counsel need not be appointed for an indigent federal habeas petitioner where the petition for relief is without merit." *Crawford v. Livesay*, 805 F.2d 1033 (Table), at *3 (6th Cir. 1986). Here, because the Petition is time-barred, counsel need not be appointed. Petitioner's Motion for Appointment of Counsel (Doc. 14) is denied.

**CONCLUSION AND RECOMMENDATION**

Following review of the record, arguments presented, and applicable law, it is apparent the instant Petition is time-barred under AEDPA, and Petitioner's grounds for relief would not warrant an evidentiary hearing even if the Petition were addressed on the merits. Accordingly, the undersigned denies Petitioner's Motion for Evidentiary Hearing, denies Petitioner's Motion for Appointment of Counsel, and recommends Respondent's Motion to Dismiss be granted.

s/James R. Knepp, II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).